UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Buckle Up Festival, LLC, *et al.*,

    Plaintiffs,

v.

City of Cincinnati., *et al.*,

    Defendants.

Case No. 1:16cv241

Judge Michael R. Barrett

## **OPINION & ORDER**

This matter is before the Court upon Defendants City of Cincinnati and Nicole Lee's Motion for Judgment on the Pleadings. (Doc. 7) Plaintiffs filed a Response in Opposition (Doc. 8) and Defendants filed a Reply (Doc. 10).

### I.    BACKGROUND

This case centers on Section 309-3 of the Cincinnati Municipal Code which requires an admission tax to be paid to the city of Cincinnati based on amounts paid for admission to any public performance for profit in the city. Plaintiffs are Buckle Up Festival, LLC and Bunbury Festival, LLC, which provided three-day musical festivals in Cincinnati in July of 2013 and July of 2014. (Doc. 2, ¶¶ 1, 2). Defendants are the City of Cincinnati and Nicole Lee, who is the Treasurer of the City of Cincinnati (collectively "the City").

Section 309-3 of the Cincinnati Municipal Code provides:

For the purpose of providing revenue to defray a portion of current expenses and other expenditures of the city of Cincinnati, there is hereby levied:

(a) A tax of 3 percent on the amounts paid for admission to any place in

the city of Cincinnati, including admission by season ticket or subscription, and including resale of admissions.

(b) A tax of 3 percent on the amounts paid for admission to any public performance for profit at any place in the city of Cincinnati in case the charge for admission is in the form of a service charge or cover charge, or a similar charge in whatsoever form, provided, that if such charge is in the form of a fixed minimum service charge to the admittee which includes provision of food, beverages or similar services, the tax shall be computed upon one-third of such fixed minimum service charge.

(c) A tax of 3 percent on the annual membership dues paid to every club or organization maintaining a golf course in the city of Cincinnati, and a tax of 3 percent on green fees, paid to golf courses in the city of Cincinnati, either under club or private ownership.

The above taxes are to be paid by the purchaser or payor, collected by the vendor as trustee for the city of Cincinnati, and returned and paid by the vendor in the manner and subject to the interest provided in Section 309-9. The amounts taxed hereunder shall include service charges paid in connection with sales of admissions; and in the case of resale of admissions shall be reduced by the price paid for such admissions by the reselling vendor, provided that such price is verified to the satisfaction of the city treasurer.

Section 309-1-A states that "admission" as used in Section 309-3 "shall include seats, chairs, tables and benches, reserved or otherwise, and other similar accommodations and charges made therefor."

In June of 2013, Plaintiffs were informed by the City that they would be required to pay the admissions tax pursuant to Section 309-3. (Id., ¶ 24 & Ex. A). Plaintiffs responded it did not believe its July 2013 festival required the payment of admissions tax because it would not be providing "reserved seating" to its patrons. (Id.) After the festival, Plaintiffs submitted payment of the admissions tax to the City of Cincinnati—under protest—in the amount of $42,128.41. (Id., Ex. C). Plaintiffs submitted payments again—under protest—in the amounts of $33,932.96 and $22,046.34 for the festivals held in July of 2014. (Id., ¶¶43, 44 & Ex. G). Plaintiffs claim that the City unlawfully and

unconstitutionally applied the admissions tax to the price of the tickets sold for its music festivals.

The City takes the position that by selling tickets, Plaintiffs are charging an admission fee for entrance into its festivals. The City argues further that Plaintiffs' decision to host the festivals without reserved seating does not exempt Plaintiffs from the admissions tax, because "admission," as it is defined by Section 309-1-A, includes seats, chairs, tables and benches "reserved or otherwise."[1]

Plaintiffs respond that regardless of whether the seating was reserved or not, the admissions tax only applies to those events which provide some sort of seating.[2] Plaintiffs also respond that MidPoint Music Festival has been taking place in Cincinnati for many years and charging a fee to patrons, but has been never forced to pay a separate the admissions tax to the City.

In their Complaint, Plaintiffs claim that the City selectively enforced Section 309-3 in violation of the Equal Protection clause of the Fourteenth Amendment and Ohio's constitution; and the City violated Plaintiffs' substantive and procedural due process rights in violation of the Fourteenth Amendment and Ohio's constitution.

---

[1]The City cites Cincinnati Municipal Code Section 309-1, which provides that "the words and phrases as defined in the sections of [Chapter 309] shall have the meanings therein respectively ascribed to them unless a different meaning is clearly indicated by the context." Plaintiffs do not dispute that this is the proper standard for interpretation of Section 309-3.

[2]The City argues that Plaintiffs never claimed in their Complaint that their festivals did not have any form of seating for patrons, but only claimed that they did not have "reserved" seating. However, in the correspondence attached as an exhibit to the Complaint, when directed to the definition of "admission" in Section 309-1, William Donabedian, the founder of the Festivals, informed the City:

> With respect, all examples listed are a type of seating. So if the language says 'similar', I'm not sure how standing is similar to seating provided by the event.

(Doc. 2-1, PAGEID #50).

## II. ANALYSIS

### A. Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

### A. Section 1983

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must prove two elements: (1) the plaintiff was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Marcilis v. Twp. of Redford*, 693 F.3d 589, 595 (6th Cir. 2012)).

### B. Vagueness

In their first claim under Section 1983, Plaintiffs claim that Section 309-3 is unconstitutionally vague and therefore violates due process.

The vagueness doctrine has two primary goals: "(1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement [by officials]." *White Oak Prop. Dev., LLC v. Wash. Tp., Ohio*, 606 F.3d 842, 847 (6th Cir. 2010) (citing *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007)). As

4

such, a law is void for vagueness if it fails to provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In addition, "[a] vague law impermissibly delegates basic policy matters to [officials] for resolution on an ad hoc and subjective basis." *White Oak*, 606 F.3d at 847.

"The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Economic regulations are subject to a less strict vagueness test "because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id*. Civil laws are also held to a less strict vagueness standard than criminal laws "because the consequences of imprecision are qualitatively less severe." *Id*. at 498-99. "Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." *Id.* at 499.

"[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Id.* at 495, n.7 (citing *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975)). Plaintiffs do not raise a First Amendment concern. Therefore, even though Plaintiffs have brought a facial challenge of Section 309-1-A, the Court will examine the provision only as it applies to Plaintiffs.

The City maintains that under Section 309-1-A, "admission" includes not only

5

seats, but "other similar accommodations and charges." The City argues that Plaintiffs provided "accommodations" to patrons that included access to an area to participate in festivities not available to the general public.

The Oxford English Dictionary defines "accommodations" as "room and provision for the reception of people, esp. with regard to sleeping, seating, or entertainment; living premises, lodgings." Based upon this dictionary definition, the Court concludes that by providing a space to people for entertainment, Plaintiffs are providing "accommodations." Therefore, even though Plaintiffs are not providing seating, it is clear from the plain language of the rule that Plaintiffs fall within the scope of Section 309-3.

Plaintiffs argue that Section 309-3 impermissibly delegates basic matters to the City for resolution only on an ad hoc and subjective basis which has led to arbitrary and unbridled discretionary enforcement. However, the Court notes that Section 309-3 is not a criminal statute, and there is no danger of arbitrary penal sanctions or government imposed stigma. *See Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 552 (6th Cir. 2007). Under this less stringent standard of review, this Court concludes that Plaintiffs cannot establish that Section 309-3 is impermissibly vague. Therefore, Plaintiffs claim that Section 309-3 is unconstitutionally vague is DISMISSED.

### C. Due Process

Plaintiffs claim that the City violated Plaintiffs' due process rights when it denied Plaintiffs' requests to have a hearing or other resolution of this matter prior to filing suit.

To establish a procedural due process claim, Plaintiffs must "have a property interest that entitles them to due process protection." *Leary v. Daeschner*, 228 F.3d

729, 741 (6th Cir. 2000) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). "'Property interests ... are not created by the Constitution," but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Id.* (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "[I]f the plaintiffs have such an interest, this court must then determine 'what process is due.'" *Id.* at 742 (quoting *Loudermill*, 470 U.S. at 541, 105 S.Ct. 1487).

"Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause." *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Florida*, 496 U.S. 18, 36, 110 S. Ct. 2238, 2250, 110 L. Ed. 2d 17 (1990). As the Supreme Court has explained:

> The State may choose to provide a form of "predeprivation process," for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding initiated by the State. However, whereas "[w]e have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest,'" *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (citation omitted), it is well established that a State need not provide predeprivation process for the exaction of taxes.

*Id.* at 36-37. Therefore, the City was not required to provide a hearing before collecting the admission tax.

However, Plaintiffs have a post-deprivation remedy under Ohio law. Ohio

7

Revised Code § 2723.01 provides: "Courts of common pleas may enjoin the illegal levy or collection of taxes and assessments and entertain actions to recover them when collected, without regard to the amount thereof, but no recovery shall be had unless the action is brought within one year after the taxes or assessments are collected."  Ohio Rev. Code § 2723.01.  The Sixth Circuit has held that this provision provides a full, complete and adequate remedy to challenge the collection of a tax. *Union Properties, Inc. v. Monroe*, 232 F.2d 884, 885 (6th Cir. 1956); *see also Babcock v. City of Conneaut*, No. 109CV1849, 2010 WL 3893621, at *8 (N.D. Ohio Sept. 27, 2010) (Ohio Rev. Code § 2723.01 satisfies due process requirement by providing opportunity for hearing after taxes are collected); *Denver Ticket Co. v. City of Cleveland*, No. 1:12 CV 00833, 2015 WL 1530618, at *2 (N.D. Ohio Apr. 6, 2015) (dismissing constitutional challenge to municipal admissions tax because Ohio Rev. Code § 2723.01 provides a mechanism in state court for raising any and all constitutional objections to a municipal tax).

Therefore, Plaintiffs claim that the City deprived them of procedural due process is DISMISSED.

### D. **Equal protection**

Plaintiffs argue that the City has violated the Equal Protection clause because Cincinnati has failed to enforce Section 309-3 against other events.

The Equal Protection Clause of the Fourteenth Amendment, § 1, provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." The Supreme Court has long held that "a classification neither involving fundamental rights nor proceeding along suspect lines ... cannot run afoul of the Equal Protection

Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis, Ind.*, 566 U.S. 673, 132 S. Ct. 2073, 2080, 182 L. Ed. 2d 998 (2012) (quoting *Heller v. Doe*, 509 U.S. 312, 319–320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). "Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes." *Id.* (quoting *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983)).

Plaintiffs claim that hundreds of bars, restaurants and other venues, as well as festivals, have never been required to pay a separate Admissions tax to the City even though they may have a cover charge or other fee. In the Complaint, Plaintiffs allege:

> 9. One example, MidPoint Music Festival ("MidPoint"), was co-launched in 2001 by [the founder of Plaintiffs, Buckle Up and Bunbury Festivals,] Donabedian, who helped run it from 2002-2008.
>
> 10. During those years, MidPoint charged admissions but never charged nor paid a separate Admissions tax to the City, nor did Defendants ever require it to charge or pay such tax.
>
> 11. The reason Defendants never charged such Admissions tax was that MidPoint did not have reserved seating, a requirement per the Code at 309-1-A.
>
> 12. Upon information and belief, as of 2015 Defendants still do not require Midpoint to charge or pay Admissions tax.
>
> 13. Since the Admissions tax was created in 1972, hundreds of bars, restaurants, and other venues, as well as festivals in the City charge an admission for a variety of music, spoken word, art, and other events.
>
> 14. Upon information and belief, since 1972, those hundreds of bars, restaurants and other venues, as well as festivals, have never charged nor paid a separate Admissions tax to the City.
>
> 15. Nor have Defendants required such Admissions tax to be charged or paid.

(Doc. 2).

The City responds that these allegations are insufficient to establish an equal protection claim because under Section 309-5 of the Cincinnati Municipal Code, some of the events are exempt from the admissions tax. However, this is a factual dispute which cannot be resolved based on the current record. While Plaintiff do allege in general terms that "hundreds of bars, restaurants and other venues, as well as festivals, have never charged nor paid a separate Admissions tax to the City," Plaintiffs also specifically name the MidPoint Music Festival, which was co-launched and run by the founder of Plaintiffs, Buckle Up and Bunbury Festivals.

The City also argues that the Complaint fails to assert that City officials were aware of similarly situated events and intentionally treated Plaintiffs differently. However, in the Complaint, Plaintiffs allege that in 2014:

> 38. Plaintiffs were optimistic that meeting with City leaders would help convince Defendants that the unlawful Admission taxes would not be charged to Bunbury Festival and Buckle-Up as, again, those festivals are not required to pay the taxes as they do not have reserved seating (as many other events that do not have such seating, do not pay the Admissions tax).
>
> 39. After communications between City leaders and Plaintiffs over the next several months, Defendants refused to admit the Admission taxes were inapplicable.
>
> 40. On 11 December 2014, the City's Mayor informed Plaintiffs that if they could get a non-profit company to provide a letter stating that the non-profit would have co-signed the permit (a non-profit co-signer being an exception to the tax), that would be introduced to the Council the next day.

(Doc. 2). The Court finds that these are sufficient allegations of knowledge on the part of City officials.

Therefore, Defendants' Motion for Judgment on the Pleadings is DENIED as to

Plaintiffs' claim that the City's enforcement of Section 309-3 was in violation of the Equal Protection clause of the Fourteenth Amendment and Ohio's constitution.

### III. CONCLUSION

Based on the foregoing, Defendants City of Cincinnati and Nicole Lee, Treasurer's Motion for Judgment on the Pleadings (Doc. 7) is **GRANTED in PART** and **DENIED in PART**.

**IT IS SO ORDERED.**

                                           */s/ Michael R. Barrett*
                                          JUDGE MICHAEL R. BARRETT